1
2
3
4
5
6
7
8

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marcus S. Topel (State Bar No. 54702)
mtopel@kasowitz.com
Daniel F. Cook (State Bar No. 70484)
dcook@kasowitz.com
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Counsel for Defendant
SKYLER CHANG

9
10
11
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

13
14
15
16
17
18
19

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SKYLER CHANG,<br><br>Defendant. | Case No:  CR-11-0097 CRB<br><br>**DEFENDANT SKYLER CHANG'S (1) OBJECTIONS TO PRESENTENCE REPORT AND (2) SENTENCING MEMORANDUM**<br><br>Date:          November 7, 2012<br>Time:          2:00 p.m.<br>Courtroom:  6, 17th Floor<br>Judge:         Hon. Charles R. Breyer |

20

21

**INTRODUCTION**

22

23

        Defendant Skyler Chang, by and through his counsel, submits the following objections to

the final presentence report ("PSR").[1]

24

25
26
27
28

_____

[1]  Defendant Chang received the final PSR by fax on October 26, 2012.  Defendant Chang was not provided with a proposed PSR to which objections could be made due to a calendaring error by the Probation Office.  However, the parties wanted to keep the presently-set November 7, 2012, sentencing date and had agreed to provide objections to a proposed PSR on a shortened schedule.  Instead, the Probation Office prepared a final PSR.  The Probation Office October 25, 2012, cover letter to this Court is incorrect in stating that a proposed PSR was provided to the parties and that

1

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    The parties have agreed to a jointly-recommended total sentence of 12 years imprisonment

2    in this case as part of the plea agreement, where that jointly-recommended sentence is a

3    conditional plea under F.R.Crim.P. Rule 11(c)(1)(a) & (C), and this Court has accepted the Mr.

4    Chang's guilty pleas to Counts 4 and 6 of the Superseding Indictment.  The final presentence

5    report makes a recommendation of a sentence of 20 years, eight years in excess of the jointly-

6    agreed sentencing recommendation of a total sentence of 12 years imprisonment under the

7    conditional pleas in this case.  In so doing, as discussed below, the final PSR seriously misapplies

8    in a perfuntory manner the sentencing factors under 18 U.S.C. §3553(a) that this Court applies in

9    determining whether to vary from the applicable Sentencing Guidelines sentence calculation.  In

10   addition, the final PSR recommendation completely ignores this Court's inherent discretionary

11   power to impose a reasonable, appropriate sentence in this case, regardless of the policy decisions

12   found in the Guidelines.

13   Both the prosecution and the defense, in reaching a plea agreement with the two guilty

14   pleas conditioned upon imposition of a total sentence of 12 years, have acknowledged that such a

15   sentence is the reasonable and appropriate one for this Court to impose in light of the

16   circumstances of this case and the §3553(a) factors. Plea Agreement at ¶¶ 8 & 17 (parties agree

17   that the jointly-recommended total sentence of 12 years is the reasonable and appropriate one).

18   The jointly-recommended 12 year total sentence is the reasonable and appropriate one

19   under the circumstances of this case.  This Court should impose the agreed jointly-recommended

20   total imprisonment of 12 years, as provided for in the plea agreement and conditional guilty pleas

21   entered by defendant Chang.

22

23   _____

24   each party has had an opportunity to express any objections to the proposed PSR; the Addendum
     To The Presentence Report correctly reflects that no proposed PSR was provided to the parties.

25   Thus, these objections are more inclusive than one would normally expect, as no issues were
     resolved in the proposed PSR objections process.  However, defendant Chang has no objection to

26   proceeding with the sentencing on November 7, 2012, as scheduled, as most objections being
     made likely are not material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is

27   unnecessary as it will either not affect the sentence or will not be considered by the court in
     sentencing.

28

Def Chang's Sentencing Memo & Objections to Presentence Report & Sentencing Memo  Case No. CR-11-0097 CRB

The objections to the final PSR, and a defense discussion of the §3553(a) factors are presented below.

## OBJECTIONS TO THE FINAL PSR

These objections to the final PSR are referenced to the paragraph numbers in the final PSR.

**Paragraph 7**

The final PSR states that it "does not agree" with the Guidelines calculations of the parties in the plea agreement, yet uses the very same Guidelines calculations to reach the same result as the plea agreement – a base offense lever of 38, a +3 adjustment for role, and a -2 adjustment for acceptance of responsibility – for a total offense level of 39.  PSR at ¶¶ 59-67 (total offense level is 39; Plea Agreement at ¶ 7 (total offense level is 39).  Thus, the plea agreement Guidelines calculations are completely correct.

The parties both well knew, as did this Court, that the applicable Guidelines Range for a level 39, with a Category I criminal history, was 262-327 months imprisonment at the time the Plea Agreement was executed and accepted by this Court.  Knowing that, the parties agreed that a total sentence of twelve (12) years was the reasonable and appropriate one for this case.  The implication in the final PSR that the parties were operating under mistaken Guidelines calculations and sentencing range is totally wrong.

This paragraph should be stricken.

**Paragraphs 18-36**

The defendant objects to inclusion of extortionate loan charges discussion that is not relevant to defendant Chang.  Defendant Chang was not charged with any substantive count of making extortionate loans.  Defendant Chang was charged with the two RICO counts, which encompassed both drug transactions and extortionate loans transactions.  The government contended that both objects were part of a single RICO enterprise.  Defendant Chang disputed this as there was no evidence to support the contention that defendant Chang was involved in a RICO enterprise involving extortionate loans and filed a motion in limine to bar introduction of any extortionate loan evidence in his trial absent a sufficient pretrial showing of admissible evidence to

3

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    show defendant Chang was part of any such extortionate loan RICO enterprise. In response, and

2    before the commencement of trial, the government dismissed the two RICO charges as to

3    defendant Chang.

4          Thus, all reference to extortionate loan charges and defendants found in PSR ¶¶18-36

5    should be stricken.

6          If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be

7    material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it

8    will either not affect the sentence or will not be considered by the court in sentencing.

9    **Paragraphs 19 and 21**

10         Paragraph 19 of the PSR asserts that the satellite cash drawers at the card clubs (the "kwei

11   tungs") commingled illegal profits from loan sharking and drug dealing with legitimate card club

12   funds. That was the government's theory in regard to drug dealing funds and was disputed by

13   defendant Chang in his motion in limine that resulted in the government's dismissal of the RICO

14   charges. There is no credible evidence to support the allegation that any funds relating to Counts 4

15   and 6 were ever in any kwei tung drawer. In addition, there is no evidence to support any

16   conclusion that defendant Chang had any access to any kwei tung drawer. The PSR asserts that

17   certain members of the RICO conspiracy had access to the kwei tungs and cash in them without

18   clarifying that defendant Chang did not have any such access.

19         This paragraph should be stricken, if not already stricken pursuant to the objection to ¶¶

20   18-36.

21         Paragraph 21 of the PSR also contains the assertion that drug funds were maintained in the

22   kwei tungs. This portion of ¶ 21 should be stricken, if not already stricken pursuant to the

23   objection to ¶¶ 18-36.

24         If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be

25   material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it

26   will either not affect the sentence or will not be considered by the court in sentencing.

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

4

**Paragraph 32**

The PSR asserts that defendant Chang distributed drugs and also was involved in racketeering activities during the course of the offense.   Defendant Chang does not dispute his involvement in the activities encompassed by Counts 4 and 6, to which he has entered conditional guilty pleas and accepted responsibility.  As noted above, the government dismissed the RICO counts as against defendant Chang.  Thus, this paragraph, in lumping defendant Chang in with extortionate loan conduct, or drug conduct for which he was not substantively charged but only encompassed by the dismissed RICO charges, should be stricken and corrected.

Although the government has contended that Mr. Chang was a drug dealer in his own right, it should be noted that such allegations depended solely upon the oral testimony of informants Welch and Lum and were not corroborated by the thousands of consensual and wiretap recordings of Mr. Chang's calls.  If Mr. Chang was the drug dealer the government suggested, then there should have been either consensually recorded calls by Welch or Lum, consensually recorded meetings with Welch or Lum, or wiretap calls of Chang that would have shown this other drug dealing by Mr. Chang.  There were not, despite their being thousands of such recorded calls. That is indicative of the lack of credibility of the Welch and Lum assertions in that regard.

Thus, this paragraph should be stricken and replaced with one that simply states that defendant Chang was involved in the distribution of the drugs charged in Counts 4 and 6 and nothing more.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraphs 38, 41, and 42**

The allegations of these paragraphs are predicated solely upon the uncorroborated statements of the two informants and, for the reasons noted above, are not credible.

If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), as premised upon the statements of the informants, the defendant has no objection.  Otherwise, defendant Chang objects to these paragraphs.

5

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 40**

The correct figure is $18,000 not $18,500.

**Paragraph 43**

The PSR incorrectly states that there was no laboratory report analysis of the one pound of methamphetamine that was the predicate for Count 4. That is not correct. There was a laboratory analysis that resulted in the stipulated amount of methamphetamine in the plea agreement.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 44**

The allegations of this paragraph about defendant Chang discussing his plans to import methamphetamine precursors into the United States from China are predicated solely upon the uncorroborated statements of informant Lum and, for the reasons noted above, are not credible. If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), as premised upon the statements of the informants, the defendant has no objection. Otherwise, defendant Chang objects to this paragraph, other than Chang flew to China.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 45**

The allegations of this paragraph about there being any plan for Chang to purchase ephedrine in China and merely have the undercover agent transport it to the United States is incorrect, as the recording plainly shows. The undercover agent pushed such an arrangement, but Chang had no such Chinese contacts for such purchases of ephedrine and never said he did in the recorded call. When the undercover agent got nowhere with pushing an arrangement for merely

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

transporting Chang's ephedrine obtained in China, falsely portrayed by Lum as being the initial Chang plan, the undercover agent quickly moved to being the one who would obtain the ephedrine in China and transport it to the United States. Chang never agreed to any such arrangement in that recorded meeting, as the recording itself demonstrates. The assertion that the agent asked what the ephedrine was for and Chang responded with a gesture is not found in the recording.

If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), the defendant has no objection. Otherwise, defendant Chang objects to this paragraph, which should be corrected to reflect this accurate information stated above.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 46**

The allegations of the first, fourth, and fifth sentence are disputed. The allegations of these sentences about events on April 23 and 24, 2009, are premised upon the statements of Lum who, for the reasons stated above, is not credible.

If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), the defendant has no objection. Otherwise, defendant Chang objects to these sentences in this paragraph.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 48**

The allegations of this paragraph as to statements by defendant Chang are premised upon the uncorroborated statements of Lum who, for the reasons stated above, is not credible.

If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), the defendant has no objection. Otherwise, defendant Chang objects to this paragraph.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be

2   material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it

3   will either not affect the sentence or will not be considered by the court in sentencing.

4   **Paragraph 49**

5   The last sentence of this paragraph as to statements by defendant Chang are premised upon

6   the uncorroborated statements of Lum who, for the reasons stated above, is not credible.

7   If this paragraph is construed as only setting forth the government's view of the offense

8   (see PSR at ¶ 17), the defendant has no objection.  Otherwise, defendant Chang objects to this

9   paragraph.

10  If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be

11  material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it

12  will either not affect the sentence or will not be considered by the court in sentencing.

13  **Paragraph 50**

14  The allegations of this paragraph as to statements by defendant Chang are premised upon

15  the uncorroborated statements of Lum who, for the reasons stated above, is not credible.

16  If this paragraph is construed as only setting forth the government's view of the offense

17  (see PSR at ¶ 17), the defendant has no objection.  Otherwise, defendant Chang objects to this

18  paragraph.

19  If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be

20  material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it

21  will either not affect the sentence or will not be considered by the court in sentencing.

22  **Paragraph 51**

23  The allegations of this paragraph as to statements by defendant Chang are premised upon

24  the uncorroborated statements of Lum who, for the reasons stated above, is not credible.

25  If this paragraph is construed as only setting forth the government's view of the offense

26  (see PSR at ¶ 17), the defendant has no objection.  Otherwise, defendant Chang objects to this

27  paragraph.

28

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 52**

The allegations of this paragraph as to statements by defendant Chang are premised upon the uncorroborated statements of Lum who, for the reasons stated above, is not credible.

If this paragraph is construed as only setting forth the government's view of the offense (see PSR at ¶ 17), the defendant has no objection.  Otherwise, defendant Chang objects to this paragraph.

If this Court imposes the jointly-agreed total sentence of 12 years, this issue may not be material under F.R.Crim.P. Rule 32(h)(3)(B) as any finding on an objection is unnecessary as it will either not affect the sentence or will not be considered by the court in sentencing.

**Paragraph 76**

Defendant Chang maintains contact with his family not only by telephone calls, but also by jail visits by family members during his detention.

**Paragraphs 78 and 80**

True and correct copies of the letters of (1) defendant Chang, (2) his wife, Hui "May" Huang, (3) defendant Chang's parents, Wendy and Darrel Chang, and (4) his sister, Naomi Chang, are attached hereto as Exhibits 1, 2, 3, and 4, respectively.

**Paragraph 126**

The perfunctory and conclusory treatment of the §3553(a) factors is totally inadequate. The defense discussion of the §3552(a) factors is addressed below.

**Recommendation – Justification Section**

In the last paragraph of the justification section of the PSR, the exception for contact with Hung Bin Tieu should be deleted as not relevant to defendant Chang, not only to defendant Cuong Tieu.

9

**CONSIDERATION OF THE PLEA AGREEMENT AND THE §3553(a) FACTORS WARRANT IMPOSITION OF THE AGREED JOINTLY-RECOMMENDED TOTAL SENTENCE OF 12 YEARS IMPRISONMENT**

The defense view is that consideration of the plea agreement, the determinations of the parties in reaching that plea agreement, and the §3553(a) sentencing factors justifying a downward variance from the Guidelines offense calculations to the jointly-recommended total sentence of 12 years imprisonment.  In that regard, we do believe that the §3553(a) factors are a material issue as this Court has accepted the Chang conditional pleas to Counts 4 and 6, with the 12-year jointly-recommended sentence by the parties, and the parties both view such a sentence as reasonable and appropriate in this case.  Plea Agreement at ¶¶ 8 & 17.  It is anticipated that this Court, in accepting the pleas, will impose the agreed jointly-recommended total sentence of 12 years imprisonment, as this Court, the day before the plea agreement was entered and the guilty pleas entered and accepted, stated he would look favorably on sentencing if defendant Chang took responsibility and reached a plea agreement avoiding the need for the trial to continue.  That is what defendant Chang did.

As to the specific §3553(a) factors, defendant Chang provides the following:

**1.     §3553(a)(1) – Nature And Circumstances Of The Offense And History And Characteristics Of Skyler Chang**

The offenses to which defendant Chang pleaded guilty are the two charged drug transactions (the one pound methamphetamine deal and the 25 kilogram ephedrine deal), arranged through his friends, confidential informants Welch (as the methamphetamine deal) and Lum (as to both drug deals).  Although the indictment charged RICO offenses relating to the drug deals and extortionate loans, the government dismissed those charges before the trial commenced.  Thus, the defense view of this case is that it was essentially a two-deal drug case, initiated by the informants, not by Mr. Chang.  Mr. Chang, by pleading guilty to the two drug deal counts, has avoided the necessity of continuing with the trial and has fully accepted responsibility for that conduct.

Mr. Chang has only one old prior conviction that is not drug related and does not even count for purposes of criminal history calculations.  See PSR at ¶¶ 70-71.  Mr. Chang is 43 years old and the functional equivalent of a first-time drug offender.  Both the age of an offender and his

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Def Chang's Sentencing Memo & Objections to Presentence Report & Sentencing Memo  Case No. CR-11-0097 CRB

first offender status are powerful predictors of the likelihood of recidivism.  Indeed, the

Sentencing Commission has itself recognized that recidivism rates decline dramatically with age.

*See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of*

*the Federal Sentencing Guidelines*, at Ex. 9 (May 2004) [hereinafter *Measuring Recidivism*

*Report], available at* http://www.ussc.gov/research.htm; U.S. Sentencing Commission, *Recidivism*

*and the "First Offender," at 13- 14 (May 2004) [hereinafter First Offender Report], available at*

http://www.ussc.gov/research.htm*; see also United States v. Hodges*, 2009 WL 36231, at *8

(E.D.N.Y. Feb. 12, 2009) ("post-*Booker*, courts have observed that recidivism is markedly lower

for older defendants" and collecting cases); *United States v. Sanchez*, 2007 WL 60517, at *4

(S.D.N.Y. Jan. 8, 2007) ("With regard to the necessity to protect society from future crimes of the

defendant, this Court and others have previously declined to impose lengthy Guidelines sentences

on older defendants in light of the Sentencing Commission's conclusion that '[r]ecidivism rates

decline relatively consistently as age increases.").

As reflected in the letters from Mr. Chang's wife, parents, and sister, Mr. Chang had a

good upbringing and was, and is, a good person who, in their view, got sidetracked with the wrong

crowd due to his drug abuse problems regarding use of cocaine, ecstasy, and alcohol.  These

problems, which he hid from everyone, existed for him before as well as during the charged

offenses, and up until his arrest in this case.  They are problems he now readily acknowledges, has

admitted to his family, and desires to get professional counseling for during his incarceration.

Although the government has contended that Mr. Chang was a drug dealer in his own right, it

should be noted that such allegations depended solely upon the oral testimony of informants

Welch and Lum and were not corroborated by the thousands of consensual and wiretap recordings

of Mr. Chang's calls.  If Mr. Chang was the drug dealer the government suggested, then there

should have been either consensually recorded calls by Welch or Lum, consensually recorded

meetings with Welch or Lum, or wiretap calls of Chang that would have shown this other drug

dealing by Mr. Chang.  There were not, despite there being thousands of such recordings.  That is

indicative of the lack of credibility of the Welch and Lum assertions in that regard.

Def Chang's Sentencing Memo & Objections to Presentence Report & Sentencing Memo  Case No. CR-11-0097 CRB

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Mr. Chang has the full and concerted support of his family and has had it all through this case.  He will continue to have it during his incarceration and upon his release.  His family has visited and talked to him regularly while he has been in custody since his arrest, as well as attending numerous court proceedings and the trial and entry of guilty pleas by Mr. Chang.  His family will be an important and consistent support group for Mr. Chang during his incarceration and in his preparation for his release and life and career after his release.  The Ninth Circuit has endorsed the consideration of family support as a mitigating sentencing factor.  *United States v. Ruff*, 535 F.3d 999, 1001 (9th Cir. 2008).

As reflected in Mr. Chang's letter, he intends to further pursue educational and career opportunities while in custody serving his sentence, and to take full advantage of all drug or other counseling available to him to deal with his substantial drug problems and dependency.  Mr. Chang was, by his character and conduct, made a trustee by the Oakland Jail while in detention there.  Although Mr. Chang has not had educational or counseling opportunities there, he intends to make full use of them once he reaches the Bureau of Prisons facility to which he is designated to serve his sentence.

    **2.**    **§3553(a)(2) – Need For The Sentence To Reflect The Seriousness Of The Offense, Promote Respect For The Law, Provide Just Punishment, Provide Adequate Deterrence, Protect The Public From Further Criminal Offenses By The Defendant, And Provide The Defendant With Needed Educational Or Vocation Training, Medical Care, And Correctional Treatment In The Most Effective Manner**

The plea agreement sets forth the jointly-agreed sentence sought by the parties – a 12-year period of imprisonment.  Such a 12-year sentence reflects the seriousness of the offense, provides just punishment, provides adequate deterrence, and protects the public from any further criminal offenses by Mr. Chang.  Such a 12-year sentence would also provide Mr. Chang with educational and vocational training opportunities, as well as needed medical care and counseling for his drug dependency problems, and other correctional treatment in the most effective manner.  A sentence of 12-years allows more than ample time to meet all these factors.  Any longer sentence would be, under the circumstances here, an unreasonable one.  The fact that the defendant, his counsel, and

K A S O W I T Z ,   B E N S O N ,   T O R R E S   &   F R I E D M A N   L L P
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   the government entered into a 12-year jointly-agreed sentence recommendation is further proof of

2   the reasonableness and appropriateness of such a sentence.  Plea Agreement at ¶¶ 8 & 17.

3       **3.**    **§3553(a)(3) – Kinds Of Available Sentences**

4       The available sentence is imprisonment, so this factor is met even though it is not really

5   material.

6       **4.**    **§3553(a)(4) & (5) – Guidelines Sentencing Range And Policy Statements**

7       The applicable Guidelines sentencing range, as computed in the presentence report, is

8   draconian and unreasonable under the circumstances here.  This Court implicitly acknowledged

9   this in stating it would respond favorably to a plea agreement as the Guidelines for the drug

10  offenses here were so high.  The government has, by agreeing to the 12-year jointly-recommended

11  sentence, also explicitly recognized the reasonableness of the agreed sentence period under the

12  §3553(a) factors.  PSR at ¶ 17.

13      **5.**    **§3553(a)(6) – Need To Avoid Unwarranted Sentencing Disparity & Restitution**

14      There simply is no basis to be concerned with unwarranted sentencing disparity with a 12-

15  year agreed sentence recommendation and sentence in this case.  Likewise, restitution is not a

16  materially relevant factor in the agreed sentenced recommended in this case.

17      **6.**    **The Circumstances Of This Case And Consideration Of The §3553(A) Factors Justify A Downward Variance To A 12-Year Sentence, As Jointly Recommended By The Parties**

18

19      A downward variance here is warranted under the circumstances of this case and the

20  relevant §3553(a) factors, as discussed above.  Under the advisory Guidelines, a variance occurs

21  when a sentencing judge sentences below the applicable Guidelines range based upon §3553(a)

22  factors.  *E.g., United States v. Cruz-Perez*, 567 F.3d, 1142, 1156 (9th Cir. 2009).  A sentencing

23  court must consider the sentence suggested by the parties after determining the applicable

24  Guidelines range.  *United States v. Rangel*, ___ F.3d ___ (9th Cir., October 15, 2012) (No. 11-

25  50062; Slip Opinion at 12281 (*citing United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en

26  banc).  In so doing, the court should decide whether the §3553(a) factors support the suggested

27  sentence.  *Rangel*, Slip Opinion at 12281.  The §3553(a) factors amply support the 12-year jointly-

28  recommended sentence in this case.

13

1    Following *United States v. Booker*, the Sentencing Guidelines are advisory only.  543 U.S.

2    220, 245 (2005).  Rather than relying on the Guidelines as mandatory edicts, the Supreme Court

3    has given judges the power to impose sentences that are not greater than necessary to satisfy the

4    statutory purposes of sentencing, to consider *all* of the characteristics of the offender and

5    circumstances of the offense, to reject advisory guidelines that are not based on national

6    sentencing data and empirical research, and to serve their function in the constructive evolution of

7    responsible guidelines.  *See Booker*, 543 U.S. 220; *Rita v. United States*, 127 S.Ct. 2456 (2007);

8    *Gall v. United States,* 552 U.S. 38, 50 (2007); *Kimbrough v. United States,* 128 S.Ct. 558 (2007).

9    Although a district court "should begin all sentencing proceedings by correctly calculating the

10   applicable Guidelines range," the court "may not presume that the Guidelines range is

11   reasonable."  *Gall*, 552 U.S. at 50.

12   A district court can vary from the Guidelines based on *policy* disagreement with them, and

13   not simply based on an individualized determination that they yield an excessive sentence in a

14   particular case.  *Spears v. United States*, 129 S.Ct. 840, 843 (2009).  A district court has the

15   discretion to conclude that the resulting advisory range "yields a sentence 'greater than necessary'

16   to achieve §3553(a)'s purposes, even in a mine-run case."  *Kimbrough*, 128 S.Ct. at 575 (2007).

17   That is precisely the case herein, where the Guidelines calculations yields a sentence

18   greater than necessary to achieve the purposes of §3553(a).  This Court should, consistent with

19   application of the §3553(a) factors, adopt the jointly-recommended sentence of 12 years

20   imprisonment.

21   Dated:  November 1, 2012              Respectfully submitted,

22                                        KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

23                                        By:     _____/s/_____
                                                  Marcus S. Topel

24                                        By:     _____/s/_____
25                                                Daniel F. Cook

26                                        Counsel for Defendant
                                          SKYLER CHANG

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# EXHIBIT 1

Dear Judge Breyer:

I accept full responsibility for my involvement in the two transactions to which I pleaded guilty –
involving the one pound of methamphetamine and the 25 kilograms of ephedrine.

In 2001, I quit my job as a computer sales manager at Artech Inc. to establish my own business
in legal importation and exportation of Dollar-Store type merchandise, and began importing and
exporting a variety of merchandise from China.  It was during this time that I began to socialize
with the wrong group of people, and this led to frequent drinking and eventually a drug addiction
for the last eight years or so.  What began as recreational use of cocaine turned into an addiction
where I was spending about $500 a month on cocaine for my personal use.  In addition, I
engaged in alcohol use and abuse of about three shots of whiskey a day when alone and drank
heavily in social gatherings during the last six years or so.  I also used ecstasy about once a week
during the last three years or so.

This substance abuse ultimately led me to make many mistakes and bad decisions.  While
serving my sentence, I intend to complete whatever programs or courses that are available to me
so I can address my cocaine addiction and serious alcohol and ecstasy use and abuse and prevent
it from re-occurring in the future.

Also while serving my sentence, I want to ensure that I utilize every single day and prison
resource to improve as an individual, and become a better person.  I intend to complete whatever
programs or courses available relating to home improvement, building, and construction classes,
and eventually obtain my contractor's license, as I wish to establish a new career in that industry
when I am released from prison.  One of my career goals will be to build my own home one day
as well as becoming a productive, law abiding, drug and substance abuse-free, and respectful
member of society.

My wife and my family have been very supportive of me since my arrest and detention and will continue to support me while I serve my sentence and upon my release.  I am very grateful for that.

I let down my parents, my wife, and my sister and everyone else who cared for me by getting involved with the wrong people and with drugs.  Upon my release I will make it up to them and prove to them that I can still be that hard-working productive person I used to be.

Skyler Chang

# EXHIBIT 2

**May Huang**

10625 Johnson Ave• Cupertino, CA 95014
Phone: 510-304-8901 • E-Mail: ahmay98@gmail.com

Date: October 8, 2012

Dear Honorable Judge Breyer:

My name is May Huang, and I am the wife of Skyler Chang.  Skyler was charged with multiple counts of drug trafficking.  One day into the trial, he decided to plea guilty; and within a month, he'll be in front of your honor for sentencing.

The case against Skyler has certainly changed our lives in some most definitive ways.  One of the most definitive turning point, however, came at the morning when Skyler decided to plea guilty to the charges and face his consequences.  From that point and onwards, with him owning up to his past actions and reflecting on his wrongdoings, then came the sense of true remorse, and the overwhelming desire to change for the better.  To me, that was the definitive turning point where I see the husband I once knew reemerge after years of absence.

Please allow me to start from the beginning.  (Don't worry, it's not that long of a story, and I'll try and keep it short.)

When we first met, I was 18, Skyler was 22.  I was just entering college, and Skyler has already received an AA degree from a community college in Utah and has decided to jump into the workforce instead of finishing his degree in Mechanical Engineering from University of Utah.  We share a similar background – immigrant families, hardworking parents, desire to better our lives through hard work and smarts.  It was probably the most typical girl-meets-boy, boy-meets-girl story.  We were young.  And we were in love.

Fast forward four years.  I finished my BS degree from Cal and headed down south to the Silicon Valley as a software developer.  Skyler followed suit, and found himself a job as a sales person at a PC retail store.  We were ecstatic about the opportunities we were given – this is the beginning of our professional careers; and looking at the possibilities before us, sky is the limit.  We poured ourselves over our jobs – weekends and holidays, 80+ hour weeks – the standard Silicon Valley story of young tech professionals.

In another four years, we got married.  I was 26 and Skyler was just about to turn 30.  By this time, the startup company I worked at from college time has just been purchased by a Fortune 500 Telco company under some very favorable terms; and I was just switching over to a brand new hot B2B startup in the semiconductor supply chain space to lead a team of 10+ developers.  Also by this time, Skyler has risen in the ranks through his creative sales and marketing abilities, and also his ability to relate, lead and motivate people.  By this time, Skyler has become the General Manager of the parent company of that local PC retailer, responsible for both retail PC sales and the CPU trading business which averaged about $50M per month turn around in cash flow.

But more than anything else – putting business achievements, revenues and profit margins aside – he's very much loved by all the people who worked with him and those who worked for him.  They like him because he's kind, warm, funny, and most importantly, he just cares.

To me, interaction with people is a learned behavior.  For Skyler, it's just part of who he is.  He likes people, people like him; he treats everybody like family, and most of time people reciprocate.  He's the type of person that goes out of his way to help a high school friend financially – someone he hasn't seen in ages – without a moment of doubt.  While I could be on the side looking skeptical at the situation, Skyler simply, plainly, (and naively), just believes.

So, we got married.  We bought our first home.  We adopted a puppy.

We drew out our 5, 10 and 20 years plans for the family we were sure to have.  We had Barbeques and late night-outs with friends and coworkers, and we took time off for road trips with my mom and his parents.  We went and took golfing lessons, and we camped out at midnight to watch meteoroid showers.  We organized fund raising for Chinese flood relief, and we debated over the Democratic vs. Republican values – and of course, I the liberal, and he the conservative.

So, at which point did this all go so wrong?

I'm not going to make excuses – there is just absolutely no remotely arguable justification for his involvement in drugs, especially when it comes to methamphetamine and ecstasy.

But I can't help but going through the what-if scenarios over and over again –

- When the 2001 down turn hit, and the PC market consolidated, virtually making CPU trading and independent local retailers non-existent, *what if* Skyler didn't offer to lay himself off and left the position to his older colleague who happened to have one kid in college, and another one just coming of age?

- *What if*, any one of those post-tech job, importing/exporting businesses he's tried turned out just somewhat sustainable during the first wave of economic storm?

- *What if*, while I was happily laboring away 100hr a week workloads one startup after another, I actually took the time and asked how he's doing, and is there anything I can help, or just simply talk about it?

- *What if*, I didn't choose to quit the well paying job back in 2006 and decided to start my own Web 2.0 company with a couple friends, and put Skyler in the position to repetitively reassuring me to "go chase your dreams, and don't worry about a thing".  Would he still have made the same dumb and desperate mistakes and somehow found his way into the world of low life drug trafficking?

There are what-if's, and then there are what-if's.

Skyler is a curiously unevenly developed individual.  On one hand, he's so good with people.  People just instantly like him.  On the other hand, (you'd expect this instinctive people skills come with some sense of basic self-preservation at the most fundamental level, but no), he is just ridiculously trusting and naïve.  As an example, not until the day Zack Welch showed up in court for his testimony, Skyler truly and sincerely believed that Zack was Steve Lum's nephew.

And most unfortunately, in the recent years, he's led himself into believing this distorted reality where the normal social standards of right and wrong seemed to have blurred if not at all disappeared.

Then came the day in court, when he's finally extracted himself out of this distorted reality field, owned up to his actions, and decided to face their consequences.

That day, in many ways, is a significant turning point.  Starting from that day, I'm seeing the person who's lost to me for so long began to reappear, along with the general sense of good and bad, right and wrong.  The values his parents instilled in him at an early age through the examples of simply being head-down, hardworking people, those values began to come back as his head is slowly coming back to reality.  Since that day in court, now I'm seeing this real person whose head is in this real world, coming back to life.

And that person, how should I put it, **IS** a good person.

So here I am, like the wife of all convicted drug dealers, begging your honor for mercy.

Begging your honor to take into consideration of who Skyler once was, before this dark period of his life; begging you to take into consideration of the possibility of Skyler emerging from this darkness and become once again the person who he really is; and most of all, begging for a second chance for not only Skyler, but Skyler and my life together as a family.

Sincerely,

May Huang
*the wife*

# EXHIBIT 3

September 25, 2012

Dear Honorable Judge Breyer,

We are Darrel and Wendy Chang.  Our son is Skyler Chang.  He has been incarcerated since March of 2011 for offenses related to drugs and has pleaded guilty to some of those charges and is awaiting sentencing.

We are writing this letter to beseech you to consider the following crucial factors in your deliberation to determine the appropriate punishment for sentencing:

- By pleading guilty, our son had owned up to his wrongdoings.  He took full responsibility for his actions and saved court time and expense to prosecute his case.

- This was the first and only drug related offence he had committed.

- Prior to the offenses, Skyler had been an upstanding and productive citizen in the community in which he had lived.  He finished high school and then graduated with a degree from a community college in Utah.  He was a proud member of the staff at Sea First Bank (now Bank of America) in Seattle, Washington.  He was even awarded certificate of excellence for his service at the Bank.

- Throughout our lives, we have been devout Christians.  We believe in raising our two children - Skyler and his older sister - in accordance with Christian tradition doing everything that all good Christians do.  We remember Skyler as being a well-mannered and respectful child.  As he grew older, he developed a big circle of friends.  People like to be around him because of his amiable disposition.  He is friendly, accommodating and always willing to help.  Skyler was baptized when he was about 13 years old.  He sang in the church choir, attended weekly Sunday School and was very active in Youth Fellowship.  Our daughter, Naomi, has a college degree and currently working as Community Builder with Seattle Housing Authority.  She has 3 beautiful children aged 17, 11 and 6.  Her husband, who also has a college degree, works for Boeing in Seattle.

- We have always been very close as a family.  In good times and in bad times, we always stand by each other.  And we had been through many adversities.  One of them was when we risked our lives attempting to cross the ocean in a boat to escape from the tyranny of the Communist regime in Viet Nam.  Our attempt

failed and we were put in a detention camp. We survived life under detention and ultimately were allowed to immigrate to the United States. Penniless but not hopeless, we worked hard and managed to build a decent life for ourselves. The arrest of our son threatened to destroy everything we have. But, even in the face of adversity like this, we are determined to do whatever necessary to help him through this ordeal. We and our daughter, Naomi, pooled our resources to hire the best counsel for his defense. There is no sacrifice too big for us to take. We will continue to support him, in or out of imprisonment, until he gets fully rehabilitated and can move on with a productive life.

- We have absolute faith in the judicial system. We believe our son has realized the gravity of the crimes he has committed and, most importantly, has shown genuine remorse and feels much embarrassment and shame in this regard. He has our full support in doing his sentence and rebuilding his life.

We earnestly pray that you will take all this into consideration in sentencing Skyler. We know that Skyler, while serving his sentence and upon his release, will take full advantage of that second chance and will return to the community as a good and productive and law abiding citizen. Skyler wants to be able to reunite with his wife, Hui (May) Huang, and the rest of the family in the shortest time possible and we fully support him and May in this regard.

Sincerely

Darrel and Wendy Chang

# EXHIBIT 4

September 25, 2012

Dear Honorable Judge Breyer,

My name is Naomi Chang and my brother is Skyler Chang. Within a few weeks, his life and those of his loved ones will be permanently changed when you hand down the sentence for the drug offenses to which he has pleaded guilty.

The case against him has certainly changed his life in many ways. But, there is another side of Skyler than that presented by his offenses that truly defines who he really is. I would like to highlight some positive aspects of the person I have known all my life as my brother.

Skyler and I were blessed with single-mindedly devoted parents who will do nothing less in raising their children to become good and responsible citizens. Early on, we were instilled with Christian values and principles. B ecause of that, we were always considered good kids by our parents, their friends, relatives and teachers.

When Skyler was younger, he was unusually obedient and respectful. He seldom got into trouble because he was good at following instructions. That was true at home and at school. By nature, he was also good at sharing and thus got along well with any kids he played with. As he grew older, he became a good helper around the house. Skyler was 15 years old when our family immigrated to the United States. We had no money and our parents had to work long hours. Skyler and I had to take care of the household chores besides struggling with our school work. I never had any problem asking him to do things even though I was only two years older than him. When we got home from school, we took turns to do the chores thus allowing each of us to do homework. We took turns cooking meals, cleaning and doing laundry. In addition, it was Skyler's job to mow the lawn in the summer and shovel snow in the winter.

He makes friends easily. People have always liked him because he is genuine, friendly, caring and always willing to help. This was evident from the fact that he was highly regarded by the correctional officers and his cell mates while he has been detained on this case.

He is, by nature, extraordinarily caring and generous too. He never forgets friends and family's birthdays, especially that of his nieces and nephews. He keeps in touch with family members regularly. Even in jail, he made a point to call my parents and me on a regular basis and we have visited with him as much as possible considering we all live in Washington. .

It is true that my brother has made a terrible mistake in getting involved in these drug offenses. I believe that his downfall was getting involved in the recreational use of some drugs that led him astray. It is also true that he has now owned up to his wrongdoings and taken full

responsibility for his actions. He is genuinely contrite and repentant and feels much shame for his conduct and for how it has impacted his whole family. I know Skyler will work hard to turn his life around while serving his sentence and upon his release.

We all, as family members, have given Skyler our full love and support while he has been detained and we will continue to do so during his service of his sentence and upon his release.

I hope you will consider all these factors in sentencing Skyler. I know that Skyler will make the best of his situation and use that time to better himself and take advantage of a second chance in which to redeem his life.

Sincerely,

Naomi Chang